UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, STATE OF INDIANA, STATE OF IOWA, STATE OF MARYLAND, STATE OF NEW YORK, PENNSYLVANIA DEPARTMENT OF ENVIRONMENTAL PROTECTION, JEFFERSON COUNTY BOARD OF HEALTH, and BAY AREA AIR QUALITY MANAGEMENT DISTRICT, | ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. |
| v. | ) ) | COMPLAINT |
| LEHIGH CEMENT COMPANY LLC, and LEHIGH WHITE CEMENT COMPANY, LLC, | ) ) ) ) | |
| Defendants. | ) ) ) | |

Plaintiffs, the United States of America ("United States"), through its undersigned

attorneys, by the authority of the Attorney General of the United States and at the request of the

United States Environmental Protection Agency ("EPA"), and the State of Indiana on behalf of

the Indiana Department of Environmental Protection, the State of Iowa on behalf of the Iowa

Department of Natural Resources, the State of Maryland on behalf of the Maryland Department

of the Environment, the State of New York on behalf of the New York State Department of

Environmental Conservation, the Pennsylvania Department of Environmental Protection, the

Jefferson County Board of Health on behalf of the State of Alabama, and the People of the State

of California by and through the Bay Area Air Quality Management District ("BAAQMD")

through its undersigned counsel (together the "State Plaintiffs"), are filing a Complaint against

Lehigh Cement Company LLC ("Lehigh") and Lehigh White Cement Company, LLC ("Lehigh White") (together the "Defendants") to enforce federal and state law, and allege as follows:

<u>STATEMENT OF THE CASE</u>

1.      This is a civil action brought against Defendants pursuant to Sections 113(b), 165, and 167 of the Clean Air Act ("Clean Air Act" or "Act"), 42 U.S.C. §§ 7413(b), 7475, and 7477, for injunctive relief and the assessment of civil penalties for alleged violations of one or more of the following statutory and regulatory requirements of the Act at one or more of Defendants' Portland cement plants, which collectively are located in eight different states within the United States:  the Prevention of Significant Deterioration ("PSD") provisions of the Act, 42 U.S.C. §§ 7470-7492, and/or the nonattainment New Source Review ("nonattainment NSR" or "NNSR") provisions of the Act, 42 U.S.C. §§ 7501-7515; and the federally-approved and enforceable state implementation plans ("SIPs"), which incorporate and/or implement the above-listed federal PSD and/or nonattainment NSR requirements; and corresponding state laws.

2.      The Plaintiffs seek an injunction ordering Defendants to substantially reduce, and mitigate past excess emissions of, their emissions of sulfur dioxide ("$SO_2$") and nitrogen oxides ("NOx") by undertaking remedial measures and operational improvements at their Portland cement manufacturing plants in the United States in such a manner that would resolve Defendants' violations, alleged herein, of the PSD and NNSR requirements of the Act and state laws.

<u>JURISDICTION AND VENUE</u>

3.      This Court has jurisdiction over the subject matter of this action pursuant to Sections 113(b) and 167 of the Act, 42 U.S.C. §§ 7413(b) and 7477, and 28 U.S.C. §§ 1331,

1345, 1355, and 1367(a), and over the parties.  This Court has supplemental jurisdiction over

state law claims.

4.      Venue is proper in this district pursuant to Section 113(b), 42 U.S.C. § 7413(b),

and 28 U.S.C. §§ 1391(b) and (c) and 1395(a), because some of the violations in this Complaint

are alleged to have occurred in this judicial district.

NOTICE AND AUTHORITY

5.      The United States Department of Justice has authority to bring this action on

behalf of the Administrator of EPA pursuant to 28 U.S.C. §§ 516 and 519, and Section 305(a) of

the Act, 42 U.S.C. § 7605(a).  The Indiana Attorney General has the authority to bring an action

involving the rights or interests of the State of Indiana or any state agency.  Ind. Code §§ 4-6-1-6;

4-6-2-1; 4-6-3-2.  The Indiana Attorney General is undertaking this litigation at the request of the

Indiana Department of Environmental Management, the air pollution control agency for Indiana

for all purposes of the federal Clean Air Act and amendments.  Ind. Code § 13-13-5-1.  The Iowa

Attorney General is authorized, on request of the Iowa Department of Natural Resources, to

institute a civil action in any district court for injunctive relief to prevent any further violation of

any order, permit, or rule, or for the assessment of a civil penalty not to exceed $10,000 per day

for each day such violation continues, or for both injunctive relief and civil penalties.  Iowa Code

§ 455B.146.  The Jefferson County Board of Health is authorized to institute a civil action

pursuant to §§ 22-28-23 and 22-22A-5 of the Code of Alabama and the provisions of the

Jefferson County Board of Health Air Pollution Control Rules and Regulations.  The Maryland

Attorney General is authorized, at the request of the Maryland Department of the Environment,

Air and Radiation Management Administration, to enjoin conduct that violates any rule or

regulation adopted under Title 2 of the Environment Article and to initiate an action to collect

civil penalties for violations of that Article or to recover damages under common law theories of liability, including nuisance.  Md. Code Ann., Envir. §§ 2-609, 610; COMAR 26.11.06.08; Md. Const., art. V, §3(a).  The Attorney General of the State of New York is authorized to bring a civil action for penalties and injunctive relief pursuant to NYS Environmental Conservation Law (ECL) §§ 71-2103 and 71-2107.  The Pennsylvania Department of Environmental Protection is authorized to institute, in a court of competent jurisdiction, proceedings to compel compliance with the Pennsylvania Air Pollution Control Act, Act of January 8, 1960, P.L. 2119 (1959), as amended, 35 P.S. § 4001-4015 pursuant to 35 P.S. § 4004(10) and to assess a civil penalty of up to $25,000 per day for each violation of that act or any regulation promulgated under the act pursuant to 35 P.S. § 4009.1.  BAAQMD is authorized to bring a civil action for penalties pursuant to California Health & Safety Code Section 42402.

6.      EPA has provided notice of violations alleged to Defendants or Defendants have waived such notice.  EPA has further provided notice to states or relevant state agencies where such alleged violations took place, pursuant to Section 113(a) of the Act, 42 U.S.C. § 7413(a).

7.      More than thirty days have elapsed since the notice referred to in the preceding paragraph was provided.

8.      Pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), notice of the commencement of this action has been given to the air pollution control agency for each state in which the violations in this Complaint are alleged to have occurred.

<u>DEFENDANT</u>

9.      Each Defendant is a "person" as that term is defined at Section 302(e) of the Act, 42 U.S.C. § 7602(e), and within the meaning ascribed under Section 113 of the Act, 42 U.S.C. § 7413.

10.     Lehigh is licensed as a limited liability company in the State of Delaware.  It has its corporate headquarters in the Commonwealth of Pennsylvania, with a business address of 7660 Imperial Way, Allentown, Pennsylvania 18195.  Lehigh is a wholly owned subsidiary of Lehigh Hanson, Inc., which has a principal business address of 300 E. John Carpenter Freeway, Suite 1645, Irving, Texas 75062.  Lehigh White is licensed as a limited liability company in the State of Delaware.  Lehigh White has its corporate headquarters in the Commonwealth of Pennsylvania, with a business address of 7660 Imperial Way, Allentown, Pennsylvania 18195.

11.     On information and belief, Lehigh owns and/or operates the following nine Portland cement plants ("plants"):  (1) Union Bridge plant, 675 Quaker Hill Road, Union Bridge, MD 21791; (2) Cupertino plant, 24001 Stevens Creek Boulevard, Cupertino, CA 95015; (3) Leeds plant, 8401 Second Avenue, Leeds, AL 35094; (4) Tehachapi plant, 13573 Tehachapi Boulevard, Tehachapi, CA 93561; (5) Mason City plant, 700 25th Street NW, Mason City, IA 50401; (6) Evansville plant, 537 Evansville Road, Fleetwood, PA 19522 (hereafter "Evansville"); (7) Redding plant, 900 15390 Wonderland Boulevard, Redding, CA 96003; (8) Lehigh Northeast Cement Company, 313 Lower Warren Street, Glens Falls, NY 12801; and (9) Mitchell plant, 180 North Meridian Road, Mitchell, IN 47446.  On information and belief, Lehigh White owns and/or operates the following two plants:  (1) York plant, 200 Hokes Mill Road, York, PA 17404; and (2) Waco plant, 100 South Wickson Road, Woodway, TX 76712. Lehigh is a former owner and/or operator of the York and Waco plants.

## STATUTORY AND REGULATORY BACKGROUND

### National Ambient Air Quality Standards

12.     Section 109 of the Act, 42 U.S.C. § 7409, requires the Administrator of EPA to promulgate regulations establishing primary and secondary national ambient air quality standards

("NAAQS") for certain criteria air pollutants.  The primary NAAQS must adequately protect the public health, and the secondary NAAQS must adequately protect the public welfare, from any known or anticipated adverse effects associated with the presence of the air pollutant in the ambient air.  Pursuant to Section 109, 42 U.S.C. § 7409, EPA has identified and promulgated NAAQS for $SO_2$ and nitrogen dioxide, a form of NOx, as such pollutants.  40 C.F.R. §§ 50.4, 50.5, 50.9, 50.10, and 50.11.

13.     Section 110 of the Act, 42 U.S.C. § 7410, requires each state to adopt and submit to EPA for approval a SIP that provides for the attainment and maintenance of the NAAQS.

14.     Under Section 107(d) of the Act, 42 U.S.C. § 7407(d), each state is required to designate those areas within its boundaries where the air quality is better or worse than the NAAQS for each criteria pollutant, or where the air quality cannot be classified due to insufficient data.  Designations that have been approved by EPA are set forth at 40 C.F.R. Part 81.  An area that meets the NAAQS for a particular pollutant is designated as an "attainment" area with respect to such pollutant.  An area that does not meet the NAAQS for a particular pollutant is designated as a "nonattainment" area with respect to such pollutant.  An area that cannot be designated for a particular pollutant due to insufficient data is termed "unclassifiable" with respect to such pollutant.

The Prevention of Significant Deterioration Requirements

15.     Part C of Title I of the Act, 42 U.S.C. §§ 7470-7492, sets forth requirements for those areas designated as either attainment or unclassifiable for purposes of attaining the NAAQS standards.  These requirements are designed to protect public health and welfare, to assure that economic growth will occur in a manner consistent with the preservation of existing clean air resources, and to assure that any decision to permit increased air pollution is made only after

careful evaluation of all the consequences of such a decision and after public participation in the decision-making process.

16.     Section 165(a) of the Act, 42 U.S.C. § 7475(a), among other things, prohibits the construction or modification and subsequent operation of a major emitting facility in an area designated as attainment or unclassifiable unless a PSD permit that comports with the requirements of Section 165 has been issued and the facility employs the best available control technology ("BACT") for each pollutant emitted from the facility that is subject to regulation under the Act.  Portland cement plants with the potential to emit 100 tons per year ("tpy") or more of any air pollutant are "major emitting facilities" in accordance with Section 169(1) of the Clean Air Act, 42 U.S.C. § 7479(1), which defines "major emitting facility" for certain listed stationary sources, including Portland cement plants.

17.     Sections 110(a) and 161 of the Act, 42 U.S.C. §§ 7410(a) and 7471, require each state to adopt a SIP that contains emission limitations and such other measures as may be necessary to prevent significant deterioration of air quality in areas designated as attainment or unclassifiable.

18.     A state (or regional air authority with authority delegated by the state) may comply with Sections 110(a) and 161 of the Act by being delegated by EPA the authority to enforce the federal PSD regulations set forth at 40 C.F.R. § 52.21, or by having its own PSD regulations approved as part of its SIP by EPA.  State PSD regulations must be at least as stringent as those set forth at 40 C.F.R. § 51.166.  All citations herein to the provisions of 40 C.F.R. § 52.21 and 40 C.F.R. Part 51 are to the provisions of 40 C.F.R. § 52.21 and 40 C.F.R. Part 51 as they appeared at times relevant to the claims in this Complaint.

19.     Under the PSD regulations, "major stationary source" is defined to include any Portland cement plant that emits or has the potential to emit 100 tpy or more of any regulated NSR pollutant, including $SO_2$ and NOx.  40 C.F.R. § 52.21(b)(1)(i)(a).

20.     As set forth at 40 C.F.R. § 52.21(i), any major stationary source in an attainment area that intends to construct a major modification must first obtain a PSD permit.  "Major modification" is defined at 40 C.F.R. § 52.21(b)(2)(i) as meaning any physical change in or change in the method of operation of a major stationary source that would result in a significant net emission increase of a regulated NSR pollutant.  "Significant" for $SO_2$ and NOx is defined at 40 C.F.R. § 52.21(b)(23)(i) in reference to a net emission increase or increase in the potential of a source to emit at a rate that would equal or exceed 40 tpy for $SO_2$ and 40 tpy for NOx.

21.     As set forth at 40 C.F.R. § 52.21(j), if a major stationary source intends to construct a major modification in an attainment area, that major stationary source shall apply BACT, as defined at 40 C.F.R. § 52.21(b)(12) and 42 U.S.C. § 7479(3), for each pollutant subject to regulation under the Act for which the modification would result in a significant net emissions increase.  The PSD regulations further require, among other things, that any application for a PSD permit must be accompanied by an analysis of ambient air quality in the area.  40 C.F.R. § 52.21(m).

22.     Pursuant to the PSD regulations, any owner or operator who commences construction of a major modification at a major stationary source, and/or subsequently operates the modified facility, without first applying for and receiving approval for construction of the major modification and without applying BACT, is in violation of the Act.  40 C.F.R. § 52.21(r)(1); *see also* 40 C.F.R. § 52.23.

23.     Indiana, Iowa, Maryland, New York, Pennsylvania, Texas, Jefferson County, and California all have approved SIPs for implementation of the PSD program.  *See* 40 C.F.R. Part 52, Subpart P – Indiana; Subpart Q – Iowa; Subpart V– Maryland; Subpart HH – New York; Subpart NN – Pennsylvania; Subpart B – Jefferson County; Subpart SS – Texas; and Subpart F – California.  The PSD programs for each of these SIPs are found at:  Indiana (326 IAC 2-2), Iowa (IOWA ADMIN. CODE r. 567-33), Maryland (COMAR 26.11.02.12 and 26.11.17), New York (6 NYCRR Part 231), Pennsylvania (25 Pa. Code §§ 127.81-127.83), Texas (30 Tex. Admin. Code Chapter 116), Jefferson County (Ala. Admin. Code r. 335-3-14-.04), and California (pertinent to this action, through the Bay Area Air Quality Management District Regulation 2, Rule 2 (2-2), and through Eastern Kern Air Pollution Control District Regulation 2, Rule 210.4).

The Nonattainment New Source Review Requirements

24.     Part D of Title I of the Act, 42 U.S.C. §§ 7501-7515, sets forth requirements in areas designated as nonattainment for the NAAQS.  Sections 110(a)(2)(C) and (I) of the Act, 42 U.S.C. §§ 7410(a)(2)(C) and (I), require that each SIP contain a program meeting the requirements of Part D of the Act for the preconstruction review and permitting of new and modified stationary sources located in areas designated as "nonattainment" for a criteria pollutant pursuant to Section 107(d) of the Act, 42 U.S.C. § 7407(d).

25.     Part D sets forth attainment dates and SIP submission dates, as well as the requirement that each SIP in a nonattainment area must be approved by EPA.  The nonattainment NSR permitting program requirements are set forth in Section 173 of the Act, 42 U.S.C. § 7503, and in the implementing regulations at 40 C.F.R. §§ 52.24, 51.165, and Part 51, Appendix S. The nonattainment NSR requirements include a permit program that authorizes permits to construct, modify, or operate major sources in nonattainment areas only if in accordance with

regulations issued by EPA, including the following requirements that: (a) the source demonstrate sufficient emission offsets; (b) the source complies with the lowest achievable emission rate ("LAER"); (c) the owner or operator of the proposed source demonstrates that all of its major sources within the state are in compliance with their emission limits; (d) the nonattainment provisions of the SIP are being properly implemented by the state; and (e) an analysis of alternative sites, sizes, production processes and environmental controls has been considered and the benefits of the proposed source outweigh the environmental social costs imposed as a result of the construction or modification. A major source proposing to construct or make a modification in a nonattainment area may be allowed to construct or modify, and thereafter to operate the newly modified facility, only if these requirements (as set forth more specifically in the regulations) are met. These requirements are referred to herein as the "nonattainment NSR regulations."

26.     At relevant times, the nonattainment NSR regulations at 40 C.F.R. §§ 52.24, 51.165 and Part 51, Appendix S, have defined "major stationary source" to include, *inter alia*, any stationary source of air pollutants that emits, or has the potential to emit, 100 tpy or more of any pollutant subject to regulation under the Act or any physical change that would occur at a stationary source not otherwise qualifying as a major stationary source, if the change itself would constitute a major stationary source.

27.     At relevant times, under the nonattainment NSR regulations, "major modification" has been defined at 40 C.F.R. §§ 52.24(f), 51.165(a)(1)(v)(A) and Part 51, Appendix S, Section II.A.5(i), as meaning any physical change or change in the method of operation of a major stationary source that would result in a significant net emission increase of any pollutant subject to regulation under the Act.

28.     At relevant times, under the nonattainment NSR regulations, "significant" has been defined at 40 C.F.R. §§ 52.24(f), 51.165(a)(1)(x) and Part 51, Appendix S, Section II.A.10(i), and under the nonattainment NSR regulations as meaning a rate of emissions that would equal or exceed any of the following:  40 tpy for $SO_2$ and 40 tpy for NOx.

29.     A state or regional air authority must comply with Sections 172 and 173 of the Act, 42 U.S.C. §§ 7502 and 7503, by having its own nonattainment NSR regulations, which must be at least as stringent as those set forth at 40 C.F.R. § 51.165 and approved by EPA as part of its SIP.

30.     Indiana, Iowa, Maryland, New York, Pennsylvania, Jefferson County, Texas, and California all have approved SIPs for implementation of the nonattainment NSR program.  *See* 40 C.F.R. Part 52, Subpart P – Indiana; Subpart Q – Iowa; Subpart V – Maryland; Subpart HH – New York; Subpart NN – Pennsylvania; Subpart B – Jefferson County; Subpart SS – Texas; and Subpart F – California.  The non-attainment NSR programs for each of these SIPs are found at: Indiana (326 IAC 2-3), Iowa (IOWA ADMIN. CODE r. 567-31), Maryland (COMAR 26.11.02.12 and 26.11.17), New York (6 NYCRR Part 231), Pennsylvania (25 Pa. Code §§ 127.201-127.216), Texas (30 Tex. Admin. Code Chapter 116), Jefferson County (Ala. Admin. Code r. 335-3-14-.04), and California (pertinent to this action, through the Bay Area Air Quality Management District Regulation 2, Rule 2 (2-2), and through Eastern Kern Air Pollution Control District Regulation 2, Rule 210.4).

## ENFORCEMENT PROVISIONS

31.     Sections 113(a)(1) and (3) of the Act, 42 U.S.C. §§ 7413(a)(1) and (3), provide that the Administrator of EPA may bring a civil action in accordance with Section 113(b) of the Act, 42 U.S.C. § 7413(b), whenever, on the basis of any information available to the

Administrator, the Administrator finds that any person has violated or is in violation of any requirement or prohibition of, *inter alia*, the PSD requirements of Section 165(a) of the Act, 42 U.S.C. § 7475(a); the nonattainment NSR requirements at Part D of Title I of the Act, 42 U.S.C. §§ 7501-7515; or the PSD and nonattainment NSR requirements of each relevant state SIP.

32.     Section 113(b) of the Act, 42 U.S.C. § 7413(b), authorizes the Administrator of EPA to initiate a judicial enforcement action for permanent or temporary injunction and/or for a civil penalty against any person whenever such person has violated, or is in violation of, *inter alia*, the requirements or prohibitions described in the preceding paragraph.  Pursuant to Section 113(b), 42 U.S.C. § 7413(b), the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701, and the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015, 28 U.S.C. § 2461 note (Nov. 2, 2015), and 40 C.F.R. § 19.4, the Administrator of EPA may seek civil penalties of up to $25,000 per day for each violation occurring on or before January 30, 1997; up to $27,500 per day for each such violation occurring on or after January 31, 1997 and up to and including March 15, 2004; up to $32,500 per day for each such violation occurring on or after March 16, 2004 and up to and including January 12, 2009; up to $37,500 per day for each such violation occurring on or after January 12, 2009 and up to and including November 2, 2015; and up to $99,681 per day for each such violation occurring after November 2, 2015, where penalties are assessed on or after January 15, 2019.

33.     Section 167 of the Act, 42 U.S.C. § 7477, authorizes the Administrator of EPA to initiate an action for injunctive relief, as necessary to prevent the construction, modification or operation of a major emitting facility that does not conform to the PSD requirements in Part C of the Act.

12

34.    Moreover, with respect to the Facilities located in their respective states, the State Plaintiffs have independent statutory authority to obtain civil penalties and injunctive relief for the violations alleged in this complaint.  *See* Indiana Code §§ 13-17-3-4, 13-17-3-5, 13-13-5-1 & 13-30-4-1; Iowa Code § 455B.112; Md. Code, Environment, §§ 2-609 & 610; New York ECL §§ 19-0305, 19-0311, 71-2303 & 71-2307; 35 P.S. §§ 4004(10), 4009.1 & 4013.6; Ala. Code §§ 22-28-23 & 22-22A-5; and Cal. Health & Safety Code §§ 40001, 40200 & 42402.

<u>CLAIM FOR RELIEF</u>

<u>(PSD/Nonattainment NSR Violations)</u>

35.    Paragraphs 1 through 34 are realleged and incorporated herein by reference.

36.    Lehigh and/or Lehigh White produce and/or at relevant times have produced cement at each of the cement plants as set forth in Paragraph 11 by, among other things, burning raw materials in a kiln.

37.    Each of the cement plants identified in Paragraph 11 at relevant times has been a major emitting facility and major stationary source subject to the PSD or the nonattainment NSR requirements of the Act identified above.

38.    EPA has conducted an investigation at a number of Defendants' plants, which included review of permitting history and emissions data, and/or analysis of other relevant information obtained from Lehigh concerning construction and operation of Defendants' cement plants.  The Plaintiffs allege the following based on the results of EPA's investigations, information, and belief.

39.    Since the initial construction of the plants referred to in Paragraph 11, one or more of Defendants' plants identified in Paragraph 11 has undergone a major modification within the

meaning of the applicable PSD or nonattainment NSR provisions.  Such major modifications have resulted in a significant net emissions increase of $SO_2$ and NOx.

40.     On information and belief, the modifications referred to in Paragraph 39 include physical changes to Portland cement manufacturing Kilns at the Evansville plant consisting of projects undertaken around 2007 at Kilns 1 and 2, including upgrading the feed handling system and kiln internals.

41.     As a result of the major modifications referred to in Paragraphs 39 and 40, Defendants have been in violation at one or more of Defendants' cement plants of either:

a.   Section 165(a) of the Act, 42 U.S.C. § 7475(a), and 40 C.F.R. § 52.21, and the corresponding SIP containing PSD requirements approved by EPA pursuant to Section 110(a)(2)(C), 42 U.S.C. § 7410(a)(2)(C), by failing to undergo PSD review for major modifications that caused significant net emissions increases of $SO_2$ and/or NOx, by failing to obtain a PSD permit, and by failing to install and operate BACT for control of such air pollutants; or

b.   The nonattainment NSR permitting programs that EPA implements pursuant to Section 110(a)(2)(C) and (I), 42 U.S.C. § 7410(a)(2)(C) and (I), and 40 C.F.R. § 52.24, 40 C.F.R. § 51.165 and 40 C.F.R. Part 51, Appendix S, or which EPA has approved as part of applicable SIPs pursuant to the foregoing provisions, in one or more of the following ways:  by failing to apply for and obtain necessary permits prior to construction, by failing to provide complete and accurate information in permit applications regarding the impact of proposed construction on emissions levels or air quality, by failing to install and operate LAER for the

control of $SO_2$ and/or $NOx$ and/or by failing to obtain and operate with federally

enforceable emissions offsets at least as great as the modified source's emissions.

42.     Unless restrained by an Order of the Court, these violations of the Act, the Act's

implementing regulations, and the state laws referenced in Paragraph 34 are likely to continue.

As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), and Section 167 of the Act (for

PSD violations), 42 U.S.C. § 7477, and pursuant to the Federal Civil Penalties Inflation

Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701, and the Federal

Civil Penalties Inflation Adjustment Act Improvements Act of 2015, 28 U.S.C. 2461 note (Nov.

2, 2015), and 40 C.F.R. § 19.4, Defendants are liable for civil penalties for each violation set

forth above of up to $25,000 per day for each violation occurring on or before January 30, 1997;

up to $27,500 per day for each such violation occurring on or after January 31, 1997 and up to

and including March 15, 2004; $32,500 per day for each such violation occurring on or after

March 16, 2004 and up to and including January 12, 2009; up to $37,500 per day for each such

violation occurring after January 12, 2009 and up to and including November 2, 2015; and up to

$99,681 per day for each such violation occurring after November 2, 2015, where penalties are

assessed on or after January 15, 2019.  Defendants are also liable for injunctive relief and civil

penalties under the state laws set forth in Paragraphs 5 and 34 for each violation set forth above.

PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

1.     Order Defendants to comply immediately with the state and federal statutory and

regulatory requirements cited in this Complaint;

2.      Order Defendants to remedy their past violations by, among other things, requiring Defendants to employ BACT or LAER, as appropriate, at the plants at which violations of the Act have occurred for each pollutant subject to regulation under the Act;

3.      Order each Defendant to apply for and comply with permits for its respective cement plants that conform to the requirements of the PSD and/or nonattainment NSR provisions of the Act and the applicable SIP, as appropriate;

4.      Order Defendant to take other appropriate actions to address or offset the unlawful emissions of $SO_2$ and/or NOx attributable to the violations of the Clean Air Act alleged above;

5.      Assess civil penalties against Defendants for up to the amounts provided by applicable law;

6.      Award Plaintiffs their costs of this action; and

7.      Grant the Plaintiffs such other relief as this Court deems just and proper.

Respectfully submitted,

FOR THE UNITED STATES OF AMERICA:

Jeffrey Bossert Clark
Assistant Attorney General
Environment and Natural Resources Division

Catherine Banerjee Rojko
Senior Counsel
Andrew Ingersoll
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box. 7611
Washington, DC 20044-7611

Tel:    (202) 514-5315
Fax:    (202) 616-6584
E-mail:  Cathy.Rojko@usdoj.gov
E-mail:  Andrew.Ingersoll@usdoj.gov

Signature page for Lehigh Complaint

*For the State of Indiana:*

Zachary D. Price, Deputy Attorney General
Office of the Indiana Attorney General
Indiana Government Center South, Fifth Floor
302 W. Washington Street
Indianapolis, IN 46204
Telephone: (317) 232-0486
Facsimile: (317) 232-7979
Zachary.Price@atg.in.gov

Signature page for Lehigh Complaint

*For the State of Iowa:*

David S. Steward
Assistant Attorney General
Iowa Department of Justice
Hoover State Office Bldg.
1305 E. Walnut St., 2nd Floor
Des Moines, IA 50319
Telephone: (515) 281-7242
Facsimile: (515) 281-6771
David.Steward@ag.iowa.gov

Signature page for Lehigh Complaint

*For the State of Maryland:*

Roberta R. James
Assistant Attorney General
Office of the Attorney General
Maryland Department of the Environment
1800 Washington Blvd.
Baltimore, MD 21230
Telephone (410) 537-3748
Facsimile (410) 537-3943
roberta.james@maryland.gov

Signature Page for Lehigh Complaint

*For the State of New York*:

Michael J. Myers
Senior Counsel
Environmental Protection Bureau
New York State Attorney General
The Capitol
Albany, NY 12224
Telephone: (518) 776-2382
Facsimile: (518) 650-9363
michael.myers@ag.ny.gov

Signature page for Lehigh Complaint

*For the Pennsylvania Department of Environmental Protection:*

Alicia R. Duke, Assistant Counsel
Office of Chief Counsel
South Central Regional Counsel
Department of Environmental Protection
909 Elmerton Avenue
Harrisburg, PA 17110
Telephone: (717) 783-0366
Facsimile: (717) 772-2400
alduke@pa.gov

Signature page for Lehigh Complaint

*For the Jefferson County Board of Health:*

David S. Maxey
Wade C. Merritt
Attorneys for the Jefferson County Board of Health
SPAIN & GILLON, LLC
505 20th Street North
Suite 1200
Birmingham, AL 35203
Telephone: (205) 581-6266
Facsimile: (205) 324-8866
DSM@Spain-Gillon.com
WCM@Spain-Gillon.com

Signature page for Lehigh Complaint

*For the Bay Area Air Quality Management District:*

Adan Schwartz
Senior Assistant Legal Counsel
375 Beale Street, Suite 600
San Francisco, CA 94105-2001
Telephone: (415) 749-5077
Facsimile: (415) 749-5103
aschwartz@baaqmd.gov