UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, STATE OF INDIANA, STATE OF IOWA, STATE OF NEW YORK, PENNSYLVANIA DEPARTMENT OF ENVRIONMENTAL PROTECTION, JEFFERSON COUNTY BOARD OF HEALTH, and BAY AREA AIR QUALTY MANAGEMENT DISTRICT<br>          Plaintiffs,<br><br>          v.<br><br>LEHIGH CEMENT COMPANY LLC, and LEHIGH WHITE CEMENT COMPANY, LLC,<br>          Defendants. | No. 5:19-cv-05688 |

**O P I N I O N**
Motion to Amend Consent Decree, ECF No. 38 — Granted

**Joseph F. Leeson, Jr.**                                                                                   **April 29, 2021**
**United States District Judge**

## I.     INTRODUCTION

As part of an initiative to advance Clean Air Act (CAA) objectives, the United States and multiple State Plaintiffs[1] brought enforcement actions against twelve cement companies relating to forty-one facilities across the United States. The instant action involves Lehigh Cement Company, LLC and Lehigh White Cement Company, LLC (collectively "Lehigh") and eleven of their cement production facilities nationwide. On November 19, 2020, this Court approved the consent decree proposed by the parties. *See* Order 11/19/2020, ECF No. 36. The United States

---
[1]     State of Indiana, State of Iowa, State of New York, Pennsylvania Department of Environmental Protection, Jefferson County Board of Health, and Bay Area Air Quality Management District.

now moves to amend the consent decree. *See* Mot. Amend, ECF No. 38. The Defendants do not oppose the motion.

After review of the proposed modification and the relevant standards for modifying an existing consent decree, the unopposed motion to modify the consent decree is granted.

## II.  BACKGROUND

Lehigh produces cement at facilities across the United States and Canada. *See* Memo. 2, ECF No. 32. The cement is produced by taking raw materials, often obtained in quarries, and gradually introducing heat. *See id.* at 3. The heat source—and focal point of this matter—is the kiln. *See id.* As the raw materials pass through the kiln, they are gradually heated, producing a final product called "clinker," the primary ingredient in cement. *See id.* During the production of clinker, the kiln emits significant amounts of Nitrogen Oxide ($NO_x$) and Sulfur Dioxide ($SO_2$). *See id.* at 4.

Both $NO_x$ and $SO_2$ are air pollutants. *See id.* $NO_x$ contributes to ground-level ozone, and $SO_2$ contributes to acid rain. *See id.* When combined, these compounds form a fine particulate matter called $PM_{2.5}$, which is known to have adverse effects on human health. *See id.* $PM_{2.5}$ can negatively affect the respiratory system and aggravate existing cardiovascular disease. *See id.*

In an effort to enforce CAA provisions relating to $NO_x$ and $SO_2$ pollution, the United States and multiple State Plaintiffs brought an enforcement action against Lehigh, seeking injunctive relief and payment of applicable penalties. The Plaintiffs asserted the following claims against Lehigh: (1) violation of the Prevention of Significant Deterioration provisions of the CAA, 42 U.S.C. §§ 7470-7492, (2) violation of the nonattainment New Source Review provisions of the CAA, 42 U.S.C. §§ 7501-7515, (3) violation of Lehigh's federally-approved State Implementation Plans, and (4) violations of state environmental law. *See id.* at 1-2.

In lieu of pursuing those claims, the Plaintiffs proposed the standing consent decree. *See* Decree, ECF No. 2. The decree mandates that Lehigh install and operate emissions control technology on the kilns identified in the decree. *See id.* at ¶¶ 12-14, 20-25. Through use of this technology, Lehigh must meet fixed emissions limits for both $NO_x$ and $SO_2$. *See id.* The decree specifically provides (1) the type of technology that Lehigh must install on each kiln, (2) the deadline for operation of that technology, and (3) 30-day rolling average emissions limits for $NO_x$ and $SO_2$ on a kiln-by-kiln basis. *See id.* at Tbl. 2, Tbl 3. The emissions limits are to remain enforceable after the termination of the decree by incorporation into a state permit or rule. *See id.* at ¶¶ 108-110.

To monitor Lehigh's compliance with these limits, the decree requires installation of continuous emissions monitoring systems (CEMS).[2] *See id.* at ¶¶ 15-19, 26-30. Lehigh must install and continuously operate CEMS on each stack or other air pollution output to measure both $NO_x$ and $SO_2$ emissions. *See id.* Lehigh must then use the data recorded and stored by the CEMS to prepare semi-annual reports as required under the terms of the proposed decree. *See id.* at ¶¶ 54-60. A failure to report or to meet the emissions limits carries with it stipulated penalties set forth in the decree. *See id.* at ¶¶ 61-69, Tbl. 4, Tbl. 5. The stipulated penalties accrue by the day and are scaled according to the type and severity of the violation. *See id.* at Tbl. 4.

In addition to the stipulated penalties for future violations of the decree, Lehigh must pay a penalty of $1.3 million to compensate for prior violations of the CAA. *See id* at ¶¶ 9-11. Of that amount, exactly half is payable to the United States, and the other half is divided amongst

---

[2] The CEMS sample, record and store emissions data from the point sources. *See* Decree ¶8(f). This data is later used to compile the semi-annual reports required under the terms of the proposed decree. *See id.* ¶¶ 54-60.

the State Plaintiffs as set forth in Table 1. *See id.* at Tbl. 1. Finally, the consent decree resolves Lehigh's liability for New Source Review claims regarding $NO_x$ and $SO_2$ emissions prior to the effective date of the proposed decree. *See id.* at ¶¶ 92-98.

Plaintiffs published the decree in the Federal Register on December 11, 2019, and opened a 30-day comment period. *See* Memo. at 6. That period was extended a total of 31 days, and it closed on February 10, 2020. *See id.* During the comment period, the Department of Justice received eight sets of public comments, with one commenter providing multiple sets of comments. *See id.* The Plaintiffs substantively responded to these comments in their Responsiveness Summary filed along with the present motion. *See id.* at Ex. A, ECF 32-1.

On November 19, 2020, this Court approved the consent decree, finding it was fair, reasonable, and consistent with the goals of the CAA. *See* Order 11/19/2020; *see also* Opinion 11/19/2020, ECF No. 35. Shortly thereafter, on January 5, 2021, the United States filed its Notice of Lodging First Amendment to Consent Decree. *See* Notice, ECF No. 37. Therein, the United States described the proposed amendments and indicated that it would open the 30-day public comment period for the amendments. *See id.*

On March 9, 2021, following the close of the public comment period, the United States filed an unopposed Motion to Enter First Amended to Consent Decree. *See* Mot. Amend.

## III. LEGAL STANDARD – MOTION TO AMEND CONSENT DECREE

A court's modification of an existing consent decree is governed by Rule 60(b) of the Federal Rules of Civil Procedure. *Rufo v. Inmates of Suffolk Cty. Jail*, 502 U.S. 367, 378 (1992). Rule 60(b)(5) permits modification of an existing consent decree if "applying it prospectively is no longer equitable . . . ." *See* FED. R. CIV. P. 60(b)(5). The party seeking modification "bears the burden of establishing that a significant change in circumstances warrants revision of the

decree." *See United States v. Alsol Corp.*, Civ. A. No. No. 09–3026 (JLL)(JAD), 2014 WL 1891352, at *2 (D.N.J. May 9, 2014) (citing *Rufo*, 502 U.S. at 383).

A party must generally establish at least one of the following conditions to meet this burden:

(1) "a significant change in factual conditions;"

(2) "a significant change in the law;"

(3) "[the] decree proves unworkable because of unforeseen obstacles;" or

(4) "that enforcement of the decree without modification would be detrimental to the public interest."

*See id.* (quoting *Democratic Nat'l Comm. v. Republican Nat'l Comm.*, 673 F.3d 192, 202 (3d Cir. 2012)). In analyzing whether to approve modification of a decree, the court should "respond to the specific set of circumstances before it by considering factors unique to the conditions of the case." *See id.* at *3 (quoting *Democratic Nat'l Comm.*, 673 F.3d at 202).

Similarly, Rule 60(b)(6) permits modification of an existing decree for "any other reason that justifies relief." *See* FED. R. CIV. P. 60(b)(6). A party meets its burden under Rule 60(b)(6) if it can show "the existence of extraordinary circumstances" under which, absent modification, an "extreme and unexpected hardship will result." *See Alsol*, 2014 WL 1891352, at *3 (citing *Mayberry v. Maroney*, 558 F.2d 1159, 1163 (3d Cir. 1977)).

IV.   DISCUSSION

    A.   The Proposed Amendments

The present motion to amend the consent decree proposes three changes to the original decree. The amendments reach only three cement kilns at a single facility, namely the Mitchell Facility located in the State of Indiana. Under the terms of the original consent decree, Lehigh

was presented with a choice between two options for bringing the Mitchell Facility kilns within CAA compliance. "Option A" would require Lehigh to retire those three kilns and permit the construction of new kilns in their place. *See* Decree ¶¶ 14(a), 22(a). "Option B" would require Lehigh to retrofit the existing kilns with add-on emissions controls. *See id.* at ¶¶ 14(b), 22(b). Were Lehigh to select Option B, it was to have 20 months to retrofit Kiln 1 and 24 months to retrofit Kilns 2 and 3, both periods to run from the effective date of the decree. *See id.* at ¶¶ 12, 20 (Table 2 and Table 3, respectively).

Under the terms of the original decree, Lehigh was to have eight months from the effective date of the consent decree to elect either Option A or Option B. *See id.* at ¶¶ 14, 22. The first proposed amendment would extend that deadline by two months, providing Lehigh a total of ten months to make an election. *See* Memo. Notice 5, ECF No. 37-1. Furthermore, should Lehigh elect Option B, the second proposed amendment would extend the time for retrofitting Kiln 1 from 20 months after the effective date of the decree to 24 months after the effective date of the decree. *See id.* This would bring Kiln 1 onto the same retrofitting schedule as Kilns 2 and 3.

Finally, the third proposed amendment would make Option A, building new kilns, the default option. *See id.* Should Lehigh fail to elect between Option A and Option B within the period allotted, Lehigh will be required to proceed with Option A. *See id.*

### B. Review of Reasons Supporting the Amendments

The parties noticed lodging of the original consent decree on December 3, 2019. The decree was published to the Federal Register on December 11, 2019, signifying the start of what would ultimately be a 61-day public comment period. At that time, the full gravity of the ongoing COVID-19 pandemic was not yet apparent. In fact, it was not until approximately one

month after the comment period closed on February 10, 2020 that the severity of the pandemic in the United States prompted nationwide changes to social interaction, government administration, and business operation.

Relevant to this matter, the pandemic caused worldwide delays in manufacturing, construction, and shipping.[3] Although Lehigh has not yet made a formal election of either Option A or B with respect to the Mitchell Facility kilns, it avers that it has been working towards Option A, constructing new kilns. *See* Brief 4, ECF No. 38-1. Despite its efforts, Lehigh has experienced delays in "engineering, part fabrication and acquisition, and construction" that are traceable to impacts from the COVID-19 pandemic. *See id.* The global and domestic contractors that Lehigh partnered with to construct the kilns "have experienced significant challenges in meeting the timelines associated with the construction of the new cement kiln due to quarantines, stay-at-home orders, and travel restrictions issued by various national, state, and local governments related to the COVID-19 pandemic." *See id.* at 4-5.

At the time that the parties lodged the original consent decree, the COVID-19 virus was not yet on the global radar. *Archived: WHO Timeline – COVID-19*, WORLD HEALTH ORGANIZATION (April 27, 2020), https://www.who.int/news/item/27-04-2020-who-timeline---covid-19. According to the World Health Organization, the first bellwether of the pandemic was a cluster of pneumonia cases in Wuhan, Hubei Province in China reported on December 31, 2019. *See id.* These isolated cases occurred weeks after the original decree was published for

---

[3] *See, e.g.*, *The Global Economic Outlook During the COVID-19 Pandemic: A Changed World*, THE WORLD BANK (June 8, 2020), worldbank.org/en/news/feature/2020/06/08/the-global-economic-outlook-during-the-covid-19-pandemic-a-changed-world (noting the COVID-19 pandemic brought "economic activity to a near-standstill as countries imposed tight restrictions on movement to halt the spread of the virus"). At that time, The World Bank forecasted "a 5.2 percent contraction in global GDP in 2020" as a result of the virus and its effect on global commerce. *See id.*

public comment. It was not until March 11, 2020 that the World Health Organization characterized COVID-19 as a pandemic. *See id.* Since then, there have been over 31 million cases of COVID-19 and over 570,000 COVID-19 deaths in the United States. *COVID Data Tracker*, CDC, https://covid.cdc.gov/covid-data-tracker/#datatracker-home (last visited on April 29, 2021). In response to the pandemic, states enacted restrictions on travel, mandated quarantine for those with symptoms, and ordered the temporary closure of the physical locations of non-essential businesses.[4] No one can dispute the widespread impact of COVID-19 on global commerce. The COVID-19 pandemic, which began after the parties noticed lodging of the original consent decree, is the sort of significant change in circumstances contemplated by Rule 60(b). Accordingly, the parties have met their burden under Rule 60(b).

Moreover, the parties agree on the amendments. The United States and the State of Indiana, in which the Mitchell Facility is situated, have reviewed the documentation and explanations provided by Lehigh regarding the COVID-19 impact and delays. *See* Not. of Amend. 4. In light of the evidence reviewed, both the United States and the State of Indiana "acknowledge that the COVID-19 pandemic has had an impact on Lehigh's operations in general and on injunctive relief-related work at the Mitchell facility . . . ." *See id.* Accordingly, both the United States and the State of Indiana agree to the proposed amendments to the consent decree.

## V. CONCLUSION

The parties present significant changed circumstances to support the proposed amendments to the consent decree under Rule 60(b). In light of the great change in

---

[4] *See, e.g.*, *All Non-Life-Sustaining Businesses in Pennsylvania to Close Physical Locations as of 8pm Today to Slow Spread of Covid-19*, PA.GOV (Mar. 19, 2020), https://www.governor.pa.gov/newsroom/all-non-life-sustaining-businesses-in-pennsylvania-to-close-physical-locations-as-of-8-pm-today-to-slow-spread-of-covid-19/.

circumstances presented by the ongoing COVID-19 pandemic, and in light of the parties' agreement regarding the the proposed amendments, the motion to amend the consent decree is granted.

A separate Order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge